IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RANDALL I. MILLER and BRENDA D. MILLER | ) | |
| Plaintiffs, | ) | Civil Action No. 2:26-cv-01836-WBV-KWR |
| v. | ) | |
| SMITTY'S SUPPLY, INC., et al. | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**SMITTY'S DEFENDANTS' MOTION TO DISMISS**
**UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

## I. INTRODUCTION

Randall I. Miller and Brenda D. Miller (the "Millers" or "Plaintiffs") cast an industrial accident as twenty-one theories of federal and state liability against Smitty's Supply, Inc. ("Smitty's"); four of its officers—Chad Tate, Craig Ellison, Jon Lorio, and Edgar R. Smith III; eight affiliated entities—CAM2 International, L.L.C., CAM2 Holding Company, L.L.C., Smith & Tate Holdings, L.L.C., Smith & Tate Investments, L.L.C., Latch Oil, Inc., Warren Chemical Corporation, Additives Plus, L.L.C., and CMS Chemicals, LLC (the "SACDs"); and federal and state agencies and officials. This motion addresses every claim asserted against Smitty's, the officers, and the SACDs (the "Smitty's Defendants"): the Clean Air Act ("CAA"), Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), Resource Conservation and Recovery Act ("RCRA"), and Safe Drinking Water Act ("SDWA") claims (First through Fourth Causes of Action); the Louisiana Environmental Quality Act ("LEQA") claim (Fifth); the Article 667, nuisance, and negligence claims (Sixth through Eighth); the 42 U.S.C. § 1983 claim (Ninth); the Article 2317.1, trespass, and loss-of-consortium claims (Eighteenth through

Twentieth); the § 1983 conspiracy claim (Twenty-First); and the Complaint's unsupported damages demands. Each claim is barred by statute, foreclosed by government enforcement, inapplicable on its face, or deficiently pleaded.

First, the challenged conditions are already subject to overlapping sovereign enforcement: a pending federal-and-state Clean Water Act ("CWA") action in this Court covering the discharges from the August 22, 2025 explosion and fire (the "Incident") and the pre-Incident permit history, *United States & State of Louisiana v. Smitty's Supply, Inc.*, No. 2:25-cv-02271 (E.D. La. filed Nov. 5, 2025) (Smitty's Ex. 1); an EPA-directed CERCLA removal; an EPA RCRA compliance order; and an LDEQ-directed site investigation. Those proceedings bar or displace the RCRA, CERCLA injunctive, and LEQA claims, and the Millers concede that the CWA action bars a CWA citizen suit. Compl. ¶ 9 n.1.

Second, the Millers' May 20, 2026 Notice of Intent to Sue identifies no specific requirement, activity, or date under the CAA, RCRA, SDWA, or LEQA, and was never sent to the SACDs or the officers individually. Pre-suit notice is a mandatory condition precedent. *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26, 31 (1989); La. R.S. 30:2026(B)(1).

Third, each federal claim fails a statute-specific element. The CAA count identifies no emission standard. The CERCLA count pleads no contribution trigger and no necessary, NCP-consistent costs actually incurred, seeks injunctive relief reserved to the government, and rests largely on excluded petroleum. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161, 168 (2004); *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007); 42 U.S.C. § 9601(14). The RCRA count ties no identified waste to the off-site endangerment alleged, and the SDWA count identifies no requirement applicable to a defendant that neither owns nor operates Roseland's public water system.

Fourth, shared addresses, common managers, titles, and general responsibilities do not plead that any SACD or officer owned or operated the Facility, handled waste, or committed any pollution-specific act. *United States v. Bestfoods*, 524 U.S. 51, 61–67 (1998); *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973).

Fifth, Article 667's strict liability is limited to pile driving and blasting, the Complaint never identifies what caused the explosion or which contaminant caused any injury, and an allegation that catastrophe "could result" is not intent. Sixth, the § 1983 claims lack state action, and the damages, penalty, relocation, and medical-monitoring demands are unavailable as a matter of law.

## II. STATEMENT OF FACTS

### A. The Facility and the August 22, 2025 Incident

Smitty's owned and operated a lubricant-oil manufacturing facility at 63399 U.S. Highway 51 in Roseland, Tangipahoa Parish, Louisiana (the "Facility"). Compl. ¶¶ 2, 14, 39. The Incident began on August 22, 2025, with an explosion and fire; the fire was fully extinguished on September 8, 2025. *Id.* ¶¶ 2, 43. The Millers allege that oil, petroleum products, hazardous substances, and PFAS from firefighting foam reached air, soil, surface water, and groundwater, including at or near their property. *Id.* ¶¶ 2–3, 43–56.

For this motion only, the Smitty's Defendants accept well-pleaded facts but not legal conclusions, statutory characterizations, or group pleading, and admit nothing regarding causation, contaminant identity, migration, exposure, injury, divisibility, damages, or any defendant's statutory status.

## B. Four Layers of Government Enforcement

### 1. Pending Federal-and-State CWA Enforcement Action

On November 5, 2025—more than nine months before this suit—the United States and the State sued Smitty's in this Court under CWA §§ 301, 309, and 311 and the LEQA. Compl., *United States & State of Louisiana v. Smitty's Supply, Inc.*, No. 2:25-cv-02271-CJB-KWR (E.D. La. filed Nov. 5, 2025) (Smitty's Ex. 1) [hereinafter Gov't Compl.]. Five of the thirteen claims arise from the Incident, including unauthorized discharges, an imminent threat under § 311(e), and the State's unauthorized-discharge and response-cost claims under La. R.S. 30:2075, 30:2076, and 30:2025(E). Gov't Compl. ¶¶ 135–59, 213–23. The rest target pre-Incident compliance—the facility response plan, sixteen SPCC-plan deficiencies, and LPDES permit violations, including effluent-limit exceedances from May 2022 through June 2025, outfall sheens, and discharges to the Highway 51 ditch from 2021 through 2024. *Id.* ¶¶ 123–34, 160–212, 224–27 & App. 1. The sovereigns seek penalties of up to $68,445 per day under federal law and $32,500 per day under state law. *Id.* ¶¶ 191, 196. On September 14, 2026, the Court permitted the Louisiana Environmental Action Network and Northshore Riverwatch to intervene under the CWA but denied intervention on their Scenic Rivers Act claim, as to which it found no showing that the State's representation was inadequate. Order & Reasons at 6-7, 10-11, R. Doc. 22, No. 2:25-cv-02271.

The Millers' "History of Noncompliance" allegations track that complaint nearly verbatim—the same 230 exceedances, SPCC deficiencies, and facility-response-plan failure—and use that history to characterize Smitty's conduct as intentional and reckless. Compl. ¶¶ 53–55, 65–68, 148, 160–64.

2. CERCLA ASAOC and EPA Completion Letter

EPA and Smitty's entered an Administrative Settlement Agreement and Order on Consent ("ASAOC"), CERCLA Docket No. 06-02-2025, on October 15, 2025, which directed EPA-approved removal work and imposed continuing coordination, access, reporting, and related obligations. *See* Smitty's Ex. 2. On September 11, 2026, EPA Region 6 issued a completion letter stating that Smitty's "fully performed all CERCLA Removal activities" and that "all goals of the ASAOC and the Statement of Work have been satisfied." Letter from Bray Fisher, On-Scene Coordinator, U.S. EPA Region 6, to Jon Lorio, Chief Operating Officer, Smitty's Supply, Inc., at 1 (Sept. 11, 2026) (Smitty's Ex. 3) [hereinafter Completion Letter]. The Completion Letter adds that the determination "does not include any continuing obligations under the ASAOC such as Post-Removal Site Controls, Payment of Future Response Costs, and record retention," and does not affect Smitty's legal obligations or its "future obligations under state and federal law governing remediation of the Site, if applicable." *Id.*

3. RCRA Administrative Compliance Order on Consent

Under RCRA § 3008(a), 42 U.S.C. § 6928(a), EPA and Smitty's entered an Administrative Compliance Order on Consent ("RCRA ACOC"), Docket No. RCRA-06-2026-0912, effective January 12, 2026. *See* Smitty's Ex. 4. It alleges seven counts—hazardous waste determinations, release minimization, contingency planning, container condition, inspections, containment, and universal-waste management—and provides that EPA-approved CERCLA methods and schedules control overlapping work. RCRA ACOC ¶¶ 39–62. The First Modification extended the March 13, 2026 compliance deadline to April 27, 2026, to allow for a waste-pile characterization, and compliance has since proceeded under the ACOC and EPA oversight.

4. <u>LDEQ Demand for Site Investigation Work Plan</u>

On June 12, 2026, LDEQ issued a demand under La. R.S. 30:2275 requiring investigation of the Facility, adjacent impacted properties, and affected waters of the state. Letter from Scott Quilliams, Assistant Secretary, Office of Environmental Assessment, La. Dep't of Env't Quality, to Smitty's Supply, Inc., c/o A. Bradley Berner, at 1 (June 12, 2026) (Smitty's Ex. 5) [hereinafter LDEQ Demand]. The LDEQ Demand requires a site investigation work plan that evaluates all potentially impacted media—including soil, sediment, groundwater, and surface water—in all potentially impacted areas, on and off site, and includes a screening level ecological risk assessment. *Id.* at 2-3.

**C. The Complaint and the Defendants**

The Complaint asserts CAA, CERCLA cost-recovery and contribution, RCRA endangerment, and SDWA claims against Smitty's and, through group allegations, the officers and SACDs. Compl. ¶¶ 92–138. It seeks a court-ordered "complete investigation—including a proper RI/FS," remediation, third-party testing, response costs, medical monitoring, relocation, civil penalties, and measures to prevent future releases. *Id.* Prayer ¶¶ A–Y.

As to the SACDs, the Complaint pleads only affiliation: a common address; some common officers, managers, registered agents, or telephone numbers; CAM2 International's status as a recurring secured co-debtor; and receipt of EPA § 104(e) requests. Compl. ¶¶ 19–26. It labels them alter egos, a single business enterprise, and mere continuations, but identifies no SACD that owned the Facility, operated a pollution-control function, arranged for disposal, transported hazardous substances, handled waste, operated an emission source, or controlled Roseland's public water system.

The officer allegations are role-based. Smith allegedly had authority over "operations, sales, and corporate affairs," and, in conclusory terms, "exercised sufficient control over the

storage, handling, and disposal of hazardous substances" to be an operator or arranger; Tate allegedly made compliance, safety, and storage decisions; Ellison was responsible for environmental compliance; and Lorio oversaw operations, hazardous-material handling, and waste management. *Id.* ¶¶ 15–18. None is tied to a specific decision, act, or date.

### D. The Millers' May 20, 2026 Notice of Intent to Sue

On May 20, 2026, the Millers sent a 21-page notice of intent to sue under the CWA, CAA, RCRA, SDWA, CERCLA, and LEQA (the "Notice"), addressed to "Smitty's Supply, Inc., Attn: Chad Tate, President [and] Anthony Berner, Secretary," and to the Corps of Engineers, LDEQ, and EPA. Compl. Ex. B at 1–2. For each statute, it announces an intent to sue "Smitty's Supply, Inc. ('Smitty's')"—no one else. *Id.* at 2. It was not addressed to any SACD or to Ellison, Lorio, or Smith, and does not identify Tate as an individual violator. *Id.* at 1. Its statute-specific sections, roughly five pages, each state a pollutant category or statute number followed by a conclusion of liability. *Id.* at 8–13.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1)

A party invoking federal jurisdiction bears the burden of establishing it, and on a Rule 12(b)(1) motion the Court may consider the complaint, undisputed record materials, and facts resolved by the Court without converting the motion to one for summary judgment. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Statutory citizen-suit preclusion and CERCLA § 113(h) are properly addressed at the threshold; a limitation that instead goes to the existence of the cause of action warrants dismissal under Rule 12(b)(6).

### B. Rule 12(b)(6)

A claim must be dismissed when the allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Factual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under either Rule, the Court may consider documents attached to or referenced in the Complaint that are central to the claims, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), and may judicially notice public records, including filings in No. 2:25-cv-02271 and EPA's and LDEQ's administrative orders and correspondence, *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). The Notice and EPA's inspection report are Complaint exhibits; the government's CWA complaint, CERCLA ASAOC, RCRA ACOC, LDEQ Demand, and Completion Letter are public records offered for their existence and terms, not the truth of any disputed fact.

**C. Application of the Standards to This Motion**

Rule 12(b)(1) governs the CERCLA § 113(h) bar and Article III standing to seek civil penalties. Because *Hallstrom* declined to decide whether the notice requirement is jurisdictional, 493 U.S. at 31, the notice defects under the CAA, RCRA, SDWA, and La. R.S. 30:2026(B)(1) are presented under Rule 12(b)(1) and, alternatively, Rule 12(b)(6). Rule 12(b)(6) governs the statute-specific pleading failures, the unavailable remedies, and the SACD and officer allegations. The RCRA § 6972(b)(2)(B) and LEQA bars are presented under both Rules in the alternative.

## IV. ARGUMENT

### A. The May 20, 2026 Notice Does Not Satisfy the Pre-Suit Notice Requirements of the CAA, RCRA, SDWA, or LEQA

1. Each statute requires notice identifying the specific requirement, activity, responsible persons, location, and dates.

Pre-suit notice is "a mandatory, not optional, condition precedent for suit" that courts may not excuse through a flexible approach. *Hallstrom*, 493 U.S. at 26, 31. The CAA, RCRA, and SDWA each bar suit before notice to the alleged violator, 42 U.S.C. §§ 7604(b)(1)(A), 6972(b)(1)(A), (b)(2)(A), 300j-8(b)(1), and their regulations require notice sufficient to identify "the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation . . . ." 40 C.F.R. § 54.3(b); *see id.* §§ 254.3(a), 135.12(a). RCRA's endangerment provision separately requires ninety days' notice "of the endangerment," 42 U.S.C. § 6972(b)(2)(A); although § 254.3(a) addresses notices of violation, an endangerment notice serves the same purpose and must identify activity allegedly creating the endangerment. *See Hallstrom*, 493 U.S. at 29. The LEQA requires thirty days' written notice to the Secretary and each alleged violator by certified mail, return receipt requested. La. R.S. 30:2026(B)(1). Given "the common structure and purpose of the two provisions," this Court construes § 2026(B)(1) "to require a comparable level of specificity . . . ." *Consol. Env't Mgmt., Inc.–Nucor Steel La. v. Zen-Noh Grain Corp.*, 981 F. Supp. 2d 523, 542 n.49 (E.D. La. 2013) (Vance, J.).

Notice must be specific enough "to inform the alleged violator about what it is doing wrong, *so that it will know what corrective actions will avert a lawsuit.*" *Id.* at 543 (emphasis in original) (quoting *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000)

(internal quotation marks omitted)). Its purpose "is to avoid a lawsuit altogether by allowing agencies to step in, investigate, and bring the defendant into compliance." *Id.* (citing *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002)). A notice that cites an entire statutory scheme without identifying a specific standard fails that test. *Shark River Cleanup Coal. v. Twp. of Wall*, 47 F.4th 126, 136 (3d Cir. 2022) (holding that a notice referring to the entire CWA was defective because it did not provide enough information to enable the recipient to identify the specific effluent limitation which had been violated, including the parameter violated).

2. <u>The Notice identifies no specific requirement, activity, or date under any statute</u>.

Every statute-specific portion of the Notice is a pollutant category or a statute number followed by a conclusion of liability. Compl. Ex. B at 8–13. None names a regulation, permit condition, or numerical standard; none describes a discrete activity; and none gives a date other than the Incident.

- **CAA**. The Notice asserts only "the unpermitted emission of Hazardous Air Pollutants ('HAPs')." Compl. Ex. B at 8. It does not select one of the 188 chemicals and compound categories on EPA's HAP list, 42 U.S.C. § 7412(b)(1), or one provision of Louisiana's SIP, which spans eighteen chapters of LAC Title 33, Part III, incorporates the NESHAPs at 40 C.F.R. Parts 61 and 63, and sits alongside the state toxic-air-pollutant program under La. R.S. 30:2060. 40 C.F.R. § 52.970; LAC 33:III.5116, 5122, 5311. It cites no NSPS, NESHAP subpart, Title V permit condition, emission point, or source category, and does not say whether the violation arises under federal or state law. It tells Smitty's that it violated something, somewhere in a vast regulatory universe, without narrowing that universe by a single provision.

- **RCRA**. The Notice attributes an endangerment to the handling, storage, and disposal of "petroleum-based products, hazardous substances, hazardous air pollutants, CERCLA hazardous substances" (including PFAS). Compl. Ex. B at 10–11. It identifies no waste code, characteristic waste, requirement of 40 C.F.R. Parts 262, 264, 265, 268, 273, or 279, permit condition, or date of any handling or disposal activity. The Notice invokes only the endangerment provision, § 6972(a)(1)(B). *Id.* at 10-12. Any violation claim under § 6972(a)(1)(A) based on the inspection findings in Compl. ¶¶ 124-27 was never noticed at all, as § 6972(b)(1)(A) and 40 C.F.R. § 254.3(a) require; and the endangerment notice does not identify the activity or dates that allegedly create the endangerment.
- **SDWA**. The SDWA discussion is two sentences stating that releases threatening a public water system violate the Act. Compl. Ex. B at 12. It identifies no maximum contaminant level, treatment technique, monitoring or reporting requirement, contaminant, named system, sample, concentration, or date, and does not explain why any requirement imposed on a public water system applies to Smitty's. It is functionally no notice at all.
- **LEQA**. The LEQA discussion lists three statute numbers with one-line labels—La. R.S. 30:2014 ("Unauthorized Discharge of Pollutants"), 30:2025 ("the obligation to abide by hazardous waste regulations during operations"), and 30:2076 ("failure to satisfy water quality standards")—and declares Smitty's liable. Compl. Ex. B at 12. In *Zen-Noh*, the notice named specific emission sources, permit limits, and regulatory provisions, yet was held deficient because the complaint relied on different sources and a different theory; the defendant's independent possession of the underlying records did not cure the defect. *Zen-Noh*, 981 F. Supp. 2d at 540-42. A listing that names no standard, source, activity, date, or theory cannot satisfy that standard.

The Millers' own exhibit shows what adequate notice looks like. EPA's October 2025 inspection report identifies twenty-six areas of concern with specific regulatory citations, including 40 C.F.R. §§ 262.11, 264.171, 264.173, and 264.174 and Parts 273 and 279, and the RCRA ACOC pleads seven counts with regulatory citations. Compl. Ex. C at 13–17; RCRA ACOC ¶¶ 39–61. None of those provisions appears in the Notice.

3. <u>The Notice was not served on the SACDs or the individual officers</u>.

Each statute requires notice to each alleged violator. 42 U.S.C. §§ 7604(b)(1)(A), 6972(b)(1)(A), 300j-8(b)(1); La. R.S. 30:2026(B)(1); 40 C.F.R. § 54.3(b). Notice to one corporation does not notify affiliates or officers later sued as separate violators. The Notice was addressed only to "Smitty's Supply, Inc., Attn: Chad Tate, President [and] Anthony Berner, Secretary," and announces an intent to sue "Smitty's" alone. Compl. Ex. B at 1-2. It was not addressed to any SACD or to Ellison, Lorio, or Smith, and it names Tate only by corporate title in the address line, without accusing him personally, stating an intent to sue him, or identifying any activity for which he was responsible. That is corporate notice, not notice to Tate as an individual violator.

4. <u>The CAA, RCRA, SDWA, and LEQA citizen-suit claims should be dismissed without prejudice.</u>

Because the Notice does not identify the requirement, activity, or dates at issue under any statute, the First, Third, Fourth, and Fifth Causes of Action should be dismissed without prejudice as to all Smitty's Defendants. Independently, because the SACDs, Ellison, Lorio, Smith, and Tate individually received no notice at all, those claims must be dismissed as to them under *Hallstrom* and, as to the LEQA claim, La. R.S. 30:2026(B)(1).

**B. The CAA Claim (First Cause of Action) Should Be Dismissed**

1. The Complaint identifies no emission standard or limitation and no ongoing or repeated violation.

The CAA authorizes a citizen suit against a person "alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of" an "emission standard or limitation" under the Act or an order respecting such a standard. 42 U.S.C. § 7604(a)(1). Section 7604(f) carefully defines enforceable standards and limitations. A complaint must identify the permit term, SIP provision, emission limit, work-practice standard, or other enforceable requirement—not merely allege unpermitted emission of Hazardous Air Pollutants.

The Millers allege VOCs, particulate matter, and hazardous air pollutants from the fire and invoke Louisiana's SIP generally. Compl. ¶¶ 93–97. They do not identify the SIP provision, permit condition, numerical limit, source category, hazardous-air-pollutant standard, or work-practice requirement supposedly violated. Nor do they connect any SACD or officer to an emission source subject to such a requirement. The count therefore does not give fair notice of the legal duty allegedly breached and fails under *Twombly* and *Iqbal*.

The CAA reaches a past violation only "if there is evidence that the alleged violation has been repeated"; otherwise, the defendant must be "in violation." 42 U.S.C. § 7604(a)(1). Congress added the repeated-violation language in 1990, after *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57, 64 (1987), construed the CWA's parallel "to be in violation" language to require a good-faith allegation of an ongoing or intermittent violation. A CAA plaintiff therefore must allege either an ongoing violation or repeated violations of an identified standard—not a single completed event like the Smitty's fire. The Fifth Circuit distinguishes a continuing violation from lingering consequences of a past discharge. *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 397 (5th Cir. 1985); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1062 (5th

Cir. 1991). *Save the Cutoff v. Iron River Ranch II, LLC*, No. 24-40717, 2025 WL 2254516, at *2 (5th Cir. Aug. 7, 2025) (citing Hamker, 756 F.2d at 397), likewise applies the ongoing-violation requirement in the CWA setting.

The fire ended on September 8, 2025, nearly a year before suit. The Incident was a single event, not a repeated violation, and the allegation that odors persist and residual waste "continue[s] to emit into the air," Compl. ¶ 95, describes lingering effects, not an ongoing violation of an identified standard. Even if paragraph 95 alleged some present emission, the claim still fails for want of an enforceable standard, and at minimum it must be confined to properly noticed, ongoing violations rather than the one-time fire.

2. <u>The pre-Incident CWA permit allegations cannot support any cause of action.</u>

The Millers concede that the government's pending CWA action bars a CWA suit. Compl. ¶ 9 n.1 (citing 33 U.S.C. § 1365(b)(1)(B)). Yet they rely heavily on Smitty's pre-Incident permit record. The 230 LPDES exceedances, sheens, recordkeeping lapses, and SPCC and facility-response-plan deficiencies alleged at Compl. ¶¶ 53–55 and 65–68 are the subject of the Fourth through Tenth and Thirteenth Claims of the government action. Gov't Compl. ¶¶ 160–212, 224–27. Allegations that could be pursued only as CWA claims, which the Millers concede are barred, do not become actionable by attaching them to a CAA, RCRA, SDWA, CERCLA, or LEQA count. They also fail on their own terms: they concern effluent from permitted outfalls between 2021 and mid-2025; none is an air emission, a waste-handling activity, or a public-water-system requirement; none is alleged to have caused the Incident; and wholly past violations cannot support citizen-suit relief. *Id.* ¶¶ 131–33; *Gwaltney*, 484 U.S. at 57, 64. The Court should disregard paragraphs 53–55 and 65–68 as a basis for any cause of action addressed in this motion.

**C. The CERCLA Claims (Second Cause of Action) Should Be Dismissed**

***1. Section*** 113(h) bars the requested relief to the extent it challenges an uncompleted CERCLA response action.

CERCLA § 113(h) withdraws federal jurisdiction "to review any challenges to removal or remedial action selected under section 9604 of this title," subject to enumerated exceptions. 42 U.S.C. § 9613(h); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 328–30 (9th Cir. 1995); *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072–73 (11th Cir. 2002). The Complaint seeks exactly such a competing directive: a "complete investigation—including a proper RI/FS," court-supervised testing, and remediation. Compl. ¶¶ 110–13 & Prayer ¶ D. When the Millers sued on August 20, 2026, the EPA-selected removal had not been certified complete; the Completion Letter followed on September 11, 2026, and it states that the completion determination does not include continuing ASAOC obligations such as post-removal site controls. Completion Letter at 1. To the extent any EPA-selected response was ongoing when suit was filed or remains ongoing, the injunctive demand must be dismissed. The exception in 42 U.S.C. § 9613(h)(1) preserves only an action under § 107 "to recover response costs or damages or for contribution," not a request to redirect the EPA response.

Independently, CERCLA does not authorize the mandatory injunction the Millers seek. Section 107(a) imposes liability for response costs and damages; the power to compel a responsible party to abate a release belongs to the President and EPA under § 106(a). 42 U.S.C. §§ 9606(a), 9607(a). A private plaintiff therefore may not obtain an order requiring investigation or remediation under CERCLA, Compl. ¶ 112 & Prayer ¶ D, regardless of § 113(h). That demand should be dismissed with prejudice.

2. The § 113(f)(1) contribution theory fails because the Millers plead no statutory trigger.

Section 113(f)(1) permits contribution only "during or following" a civil action under CERCLA § 106 or § 107(a). 42 U.S.C. § 9613(f)(1); *Cooper Indus.*, 543 U.S. at 161, 168. The Millers allege no such action and no qualifying settlement resolving their liability. Nor may they merge contribution with § 107(a)(4)(B) cost recovery, which is a distinct remedy. *Atl. Rsch.*, 551 U.S. at 138–39. The contribution theory should be dismissed with prejudice.

3. Any contribution claim concerning matters resolved in the ASAOC is protected by § 113(f)(2), subject to the settlement's actual terms.

Independently, "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). To the extent the ASAOC resolved Smitty's CERCLA liability, any contribution claim for matters it addresses is barred, as defined by the settlement's covenant, reservations, and "matters addressed" provisions.

4. The § 107(a) claim does not plausibly allege necessary, NCP-consistent costs actually incurred.

A § 107(a)(4)(B) claimant must plead necessary response costs it actually incurred consistent with the national contingency plan. 42 U.S.C. § 9607(a)(4)(B); *Atl. Rsch.*, 551 U.S. at 139. The Complaint lists testing, sampling, alternative water, relocation, and remediation in conclusory terms, Compl. ¶¶ 109–10, without any vendor, date, amount, work performed, link to a release, or NCP step such as site evaluation, cost-effective selection, documentation, or public participation. *See* 40 C.F.R. § 300.700(c)(3), (5)–(7). Nor does it distinguish response costs from damages or explain what private response was necessary in light of the EPA and LDEQ work. The § 107 claim should be dismissed without prejudice.

The § 107 claim is also overbroad on its face. CERCLA's definition of "hazardous substance" "does not include petroleum, including crude oil or any fraction thereof," that is not otherwise specifically listed. 42 U.S.C. § 9601(14). The Complaint's core allegation is that "oil and other petroleum substances and products" from a lubricant-oil plant reached the Millers' property, Compl. ¶¶ 2, 36, 38, 47, but it does not distinguish petroleum from any listed hazardous substance or allege that any response cost was incurred for the latter. To the extent the claim rests on oil and petroleum products, it is excluded by statute and should be dismissed with prejudice. And because the request for a declaratory judgment of future liability under § 113(g)(2), Compl. ¶ 113, depends on a viable § 107 claim, it falls with that claim.

The natural-resources theory fails independently: only governmental trustees may recover natural-resource damages, 42 U.S.C. §§ 9601(16), 9607(f)(1), and CERCLA provides no private remedy for bodily injury, medical monitoring, emotional distress, lost livestock, or diminution in value.

**D. The SACDs and Officers Are Not Liable Under Any Count**

1. <u>The Complaint relies on impermissible group pleading.</u>

The Complaint defines "Smitty's Defendants" to include Smitty's, four officers, and eight SACDs, then attributes virtually all conduct to that thirteen-member group, and each count "reallege[s] and incorporate[s] by reference all preceding paragraphs." Compl. ¶¶ 92, 98, 117. Allegations against defendants as a group are not imputable to a particular defendant unless the complaint specifically connects that defendant to the challenged conduct. *Cf. Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (securities-fraud scienter); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (complaints that adopt all preceding counts and assert claims against multiple defendants without specifying which defendant is responsible for which act fail Rule 8). In *In re Settoon Towing, L.L.C.*, No. 23-30578 c/w No. 24-30044, slip

op. at 6–7 & n.13 (5th Cir. July 24, 2024) (per curiam) (unpublished), the Fifth Circuit affirmed dismissal of environmental-tort claims where plaintiffs could not allege "which of the approximately eighteen Defendants were negligent and in what way," permitting only an inference of a "mere possibility of misconduct," and described the complaint as "more akin to a 'group pleading' complaint, which this Court has rejected." *Id*. (citing *Armstrong v. Ashley*, 60 F.4th 262, 274 (5th Cir. 2023)); *see Iqbal*, 556 U.S. at 679. The same defect pervades every count here.

2. No SACD is a covered person, waste handler, emission source, water-system operator, or proprietor.

The pleaded facts are affiliation only. Compl. ¶¶ 19–26. None places a SACD in a CERCLA category of owner, operator, arranger, or transporter. 42 U.S.C. § 9607(a)(1)–(4). The lone allegation approaching operation—that "[c]ertain of the SACDs currently operate a successor in interest entity on the Smitty's site," Compl. ¶ 35—names no SACD, describes present activity rather than ownership or operation "at the time of disposal," 42 U.S.C. § 9607(a)(2), and pleads none of the successor-liability factors the Complaint itself recites, Compl. ¶ 25: no express or implied assumption of liabilities, no de facto merger or consolidation, no facts showing that any SACD is a mere continuation of Smitty's, and no fraudulent transaction. Ownership alone does not make a parent liable for a subsidiary. Direct operator liability requires that the affiliate itself "manage, direct, or conduct operations specifically related to pollution . . . ." *Bestfoods*, 524 U.S. at 61–62, 66–67; *Joslyn Corp. v. T.L. James & Co.*, 893 F.2d 80, 82-83 (5th Cir. 1990). No SACD is alleged to have generated, handled, stored, or disposed of waste, as RCRA's "contributed to" element requires; to have operated an emission source subject to a CAA standard; to have controlled Roseland's water system; or to have owned or had custody of the Facility for purposes of the Louisiana tort claims.

3. <u>The Complaint pleads no basis for veil piercing or single-business-enterprise liability.</u>

*Bestfoods* leaves derivative liability to veil-piercing principles that preserve a strong presumption of separateness. 524 U.S. at 62–64. Louisiana looks to commingling, disregard of formalities, undercapitalization, failure to keep separate accounts, and use of the entity to commit fraud. *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168–69 (La. 1991). The Complaint pleads none of those facts—no commingled funds, transfers without consideration, inadequate capitalization, sham transactions, or post-Incident asset stripping. Its conclusory assertion that entities were formed "in part" to evade liability supplies no who, what, or when, and where the asserted misuse is fraud or intentional evasion, Rule 9(b) requires particularity. All claims against the SACDs should be dismissed.

4. <u>No officer is alleged to have personally done anything.</u>

Corporate office does not make an individual a CERCLA operator, a RCRA contributor, or a CAA violator. The question is whether the officer personally managed, directed, or conducted pollution-specific operations. *Bestfoods*, 524 U.S. at 66–67. Smith's alleged authority over "operations, sales, and corporate affairs" is ordinary executive oversight, and the accompanying assertion that he "exercised sufficient control" over hazardous-substance storage, handling, and disposal to be an operator or arranger merely restates the legal standard. Compl. ¶ 18. The allegations that Tate made decisions on compliance and storage, that Ellison was responsible for environmental compliance, and that Lorio oversaw handling and waste management, Compl. ¶¶ 15–17, describe job titles and portfolios, not facts. The Complaint identifies no decision any officer made, no storage, handling, or disposal practice any officer directed, no date, and no link between a personal act and a release. That is neither pollution-specific conduct under *Bestfoods* nor the active, direct connection to waste that RCRA requires. *Hinds Invs., L.P. v. Team Enters., Inc.*, 654

F.3d 846, 851–52 (9th Cir. 2011). Nor does the Complaint plead arranger liability against any officer, *see* Compl. ¶ 18 & Prayer ¶ T: arranger status requires intentional steps to dispose of a hazardous substance, *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009), and no officer is alleged to have taken any. And because no officer is a covered person, none can be liable in contribution. *OHM Remediation Servs. Corp. v. Evans Cooperage Co.*, 116 F.3d 1574, 1582 (5th Cir. 1997).

Louisiana law yields the same result. An officer is not personally liable for the corporation's tort because of "general administrative responsibility for performance of some function of the employment"; the plaintiff must plead a specific duty delegated to the officer, a breach through personal fault, and a personal duty owed to the plaintiff. *Canter*, 283 So. 2d at 721. The Complaint pleads none of those elements as to any officer. Compl. ¶¶ 15–18, 42. Every claim against Tate, Ellison, Lorio, and Smith should therefore be dismissed. Those dismissals should be without prejudice, except that (a) the official-capacity claims addressed below, and (b) the claims and remedies that fail as a matter of law as to every Smitty's Defendant—the CERCLA § 113(f)(1) contribution theory, the demand for CERCLA injunctive relief, the Article 667 strict-liability claim, the § 1983 and § 1983 conspiracy claims, the intentional-tort and intentional-trespass theories, and the remedies identified in Sections IV.C.4, IV.G.3, and IV.J—should be dismissed with prejudice.

Finally, the claims against the officers "in [their] official capacit[ies]," Compl. ¶¶ 15–18, are redundant of the claims against Smitty's. An official-capacity claim is simply another way of pleading against the entity of which the individual is an agent, *cf. Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), and Smitty's is already a defendant. The official-capacity claims should be dismissed with prejudice.

**E. The RCRA Citizen-Suit Claim (Third Cause of Action) Should Be Dismissed**

1. Federal enforcement bars the claim, and the completed and ongoing government work leaves no present endangerment to enjoin.

RCRA § 7002 bars commencement of an imminent-and-substantial-endangerment action when EPA, "in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment . . ." has issued a CERCLA § 106 order or RCRA § 7003 order and "a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action." 42 U.S.C. § 6972(b)(2)(B)(iv). Where the qualifying order is an administrative order under clause (iv), the bar applies "only as to the scope and duration" of the administrative order. *Id.* § 6972(b)(2)(B).

That limitation implements the same anti-interference principle as CERCLA § 113(h). In *McClellan*, the court held that a RCRA claim seeking to alter an EPA-selected CERCLA cleanup was an impermissible challenge. 47 F.3d at 330. And in *Residents of Gordon Plaza, Inc. v. Cantrell*, the Fifth Circuit affirmed dismissal under 42 U.S.C. § 6972(b)(2)(B)(iv), which prohibits commencement of a citizen suit where a responsible party is diligently conducting a removal action pursuant to a consent decree with the EPA. 25 F.4th 288, 301 (5th Cir. 2022) (RCRA's statutory bar on citizen suits is "intended to avert citizen suit interference with state and federal enforcement activities" (quoting *Cico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 28 (1st Cir. 2011))). The court noted that the complaint addressed "the same environmental concerns as the consent Decree" and that EPA had determined that the defendant was "in compliance with the Decree." *Id.*

The ASAOC required Smitty's to perform EPA-selected removal work, and the RCRA ACOC—effective January 12, 2026, and extended once to permit waste characterization—prescribes the Facility's waste-management compliance. The bar is measured when the action is

"commenced." 42 U.S.C. § 6972(b)(2)(B). When the Millers filed suit on August 20, 2026, the ASAOC removal remained open; EPA did not determine that Smitty's had fully performed the removal until September 11, 2026. To the extent the ASAOC was issued under qualifying § 106 authority and the alleged endangerment falls within its scope, § 6972(b)(2)(B)(iv) bars a private order compelling a different investigation and cleanup, and the Millers' requested RI/FS and remediation overlap the same release and media. The ACOC confirms that EPA, not a private plaintiff, has been addressing the same waste-management conditions, and courts should not issue inconsistent compliance commands.

Section 6972(b)(2)(C) separately bars suit where the State, to restrain or abate the same conditions, has commenced and is diligently prosecuting its own RCRA endangerment action, is actually engaging in a removal action under CERCLA § 104, or has incurred costs to initiate an RI/FS under CERCLA § 104 and is diligently proceeding with a remedial action. 42 U.S.C. § 6972(b)(2)(C)(i)-(iii). The LDEQ Demand issued under state law, La. R.S. 30:2275, and the State's pending suit asserts CWA and LEQA claims, so the text of subsection (b)(2)(C) may not reach them. But the LDEQ Demand reflects state-directed investigation of the Facility, adjacent impacted properties, and affected waters—the same media—and bears directly on whether additional court-ordered investigation and remediation are necessary or appropriate. LDEQ Demand at 1-3. Government diligence turns on whether the government is genuinely pursuing compliance, not whether a private plaintiff prefers a different remedy. *See La. Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 740–41 (5th Cir. 2012) (analogous CWA bar).

Finally, the endangerment must exist when suit is filed; the statute "quite clearly excludes waste that no longer presents such a danger." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485-86 (1996); *see also Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994) (endangerment provision requires "a threat which is present now"). These points operate together rather than in tension. To

the extent EPA-directed removal work was still under way when the Millers sued, § 6972(b)(2)(B) bars the claim within the scope of that work; to the extent the work was complete, the conditions it addressed no longer present the endangerment the statute requires. With EPA's removal "fully performed," the Facility's waste-management compliance proceeding under the ACOC and EPA oversight, and LDEQ's site investigation underway, there is no enforcement gap for additional injunctive relief to fill. The RCRA claim should be dismissed to the extent it overlaps the government's work, and any remainder must be pleaded with specificity.

2. The Complaint does not tie any identified solid or hazardous waste to the endangerment it alleges.

RCRA requires that the defendant contributed to the handling, storage, treatment, transportation, or disposal of "any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . ." 42 U.S.C. § 6972(a)(1)(B). The endangerment the Millers allege is off-site contamination of their property, the Tangipahoa River, and the Roseland community. Compl. ¶¶ 118, 122–23. For that endangerment, the Complaint alleges only "oil, petroleum products, hazardous substances, and PFAS," and identifies no listed waste by code, no characteristic waste under 40 C.F.R. Part 261, Subpart C, and no specific solid-waste stream that reached the Millers' property. *Id.* ¶¶ 43–56, 118–23. The regulatory findings the Complaint borrows from EPA's inspection, *id.* ¶¶ 124–27, concern on-site container management, labeling, and recordkeeping—the very conditions the RCRA ACOC addresses—and the Complaint does not allege that any of those on-site wastes migrated to the Millers' property or presents a present endangerment there. The claim should be dismissed under Rule 12(b)(6), and as to the SACDs and officers it fails for the reasons stated in Section IV.D.

**F. The SDWA Claim (Fourth Cause of Action) Should Be Dismissed**

The SDWA citizen-suit provision authorizes suit against a person "who is alleged to be in violation of any requirement prescribed by or under" the Act. 42 U.S.C. § 300j-8(a)(1). It does not impose free-floating liability whenever contamination allegedly reaches drinking water. The plaintiff must identify an applicable SDWA requirement and a defendant presently violating it. *See Mattoon v. City of Pittsfield*, 980 F.2d 1, 4–5 (1st Cir. 1992).

The City of Roseland—not Smitty's—operates the public water system. Compl. ¶ 132. The Complaint identifies no treatment technique, monitoring duty, reporting rule, maximum-contaminant-level obligation, underground-injection requirement, or emergency order applicable to any Smitty's Defendant. Its assertion that releasing contaminants "into or threaten[ing] a public water system" violates the SDWA, *id.* ¶ 131, is a legal conclusion unsupported by the statute's regulatory structure.

*Concerned Pastors for Social Action v. Khouri*, 194 F. Supp. 3d 589, 605-06 (E.D. Mich. 2016), is not to the contrary; there, state and city officials allegedly exercised direct operational and financial control over Flint's water system. An industrial facility does not "operate" a public water system because its pollutants allegedly reach source water, and the Complaint pleads no Smitty's Defendant's authority over Roseland's intake, treatment, monitoring, or distribution. Reading the SDWA otherwise would convert it into a general-purpose pollution statute overlapping the CWA, RCRA, and CERCLA. The Fourth Cause of Action should be dismissed under Rule 12(b)(6).

**G. The LEQA Claim (Fifth Cause of Action) Should Be Dismissed**

1. The LEQA citizen-suit provision bars this action because Smitty's is already the subject of a State enforcement action for the same violations.

La. R.S. 30:2026(B)(4) bars a citizen suit against a person who, with respect to the same violation, is (a) under an order issued pursuant to the LEQA Subtitle, (b) a defendant in a civil suit under La. R.S. 30:2025, or (c) the subject of a § 30:2025(E) penalty action. In the pending enforcement action, the State sued Smitty's under § 30:2025 and seeks § 30:2025(E) penalties for the Incident-related unauthorized discharges and water-quality violations under La. R.S. 30:2075 and 30:2076 and for the pre-Incident LPDES violations. Gov't Compl. ¶¶ 187–227. The Millers' LEQA count invokes overlapping provisions—most notably La. R.S. 30:2076, on which the State also sues—and seeks the same § 30:2025(E) penalties, including the same $1,000,000 enhancement that the State seeks and that the CWA intervenors' proposed complaint also requested. Compl. ¶¶ 142–43; Gov't Compl. Prayer ¶ H; Order & Reasons at 9, R. Doc. 22, No. 2:25-cv-02271. Subparts (b) and (c) are therefore satisfied. The RCRA ACOC and LDEQ's June 12, 2026 demand, which address the same hazardous-waste and environmental conditions, further confirm that Smitty's is already subject to government orders concerning the same violations.

2. The Complaint does not identify a specific LEQA violation.

Louisiana's authorized hazardous-waste program tracks the federal framework in 40 C.F.R. Parts 260–279. *See* 40 C.F.R. § 272.951; La. R.S. 30:2171–2205. For the reasons stated in Section IV.E.2, generic references to "oil, petroleum products, hazardous substances, and PFAS" do not identify what material was a regulated waste, what state requirement governed it, or what conduct violated it. The La. R.S. 30:2025 component should be dismissed under Rule 12(b)(6), and the entire claim independently fails for want of notice. *See* Section IV.A.

#### ***3. <u>The LEQA penalty demand exceeds what a citizen-suit plaintiff may seek</u>.***

Even if the LEQA claim survived, the penalty demand would not. The Millers seek penalties "[p]ursuant to La. R.S. 30:2025(E)" of up to $32,500 per day plus an additional penalty of up to $1,000,000. Compl. ¶ 143. Section 30:2025(E) belongs to the State's enforcement scheme: civil actions to carry out the LEQA "shall be brought by the secretary," represented by the attorney general, La. R.S. 30:2025(A), and the attorney general "shall prosecute all civil cases arising out of violation of any provision of this Subtitle including the recovery of penalties," *id.* § 30:2025(G)(1). The citizen-suit provision supplies its own, narrower penalty. If a violation "has occurred, or is occurring," the court "may, in order to enforce the provisions of this Subtitle, assess a civil penalty not to exceed ten thousand dollars for each day of the continued noncompliance," and any penalty "shall be awarded to and collected by the state of Louisiana and deposited into the state treasury." La. R.S. 30:2026(A)(2)–(3). The § 30:2025(E) demand, including the $1,000,000 enhancement, should therefore be dismissed with prejudice; any penalty under § 30:2026 is capped at $10,000 per day and payable only to the State. And because any such penalty would be paid to the state treasury, the Millers lack Article III standing to seek it for wholly past conduct for the reasons stated in Section IV.J.

### H. The Louisiana Tort Claims Should Be Dismissed or Narrowed

#### 1. <u>Article 667's strict liability (Sixth Cause of Action) is limited to pile driving and blasting.</u>

Article 667 states that "[a]n ultrahazardous activity as used in this Article is *strictly limited to pile driving or blasting with explosives*." La. C.C. art. 667 (emphasis added) (as amended by Acts 1996, 1st Ex. Sess., No. 1, § 1). Manufacturing and storing petroleum products are neither. Compl. ¶¶ 145–50. The Sixth Cause of Action should be dismissed with prejudice.

2. The nuisance claim (Seventh Cause of Action) pleads no proprietor other than Smitty's and no fault.

Articles 667–669 regulate the use a "proprietor" makes of his property, and no officer or SACD is alleged to own the Facility. Compl. ¶¶ 14, 35. As to Smitty's, a proprietor is answerable only if he knew or should have known his works would cause damage that reasonable care could have prevented. La. C.C. art. 667. The Complaint never identifies what caused the explosion or what precaution would have prevented it, and EPA's initial situation report states that the cause was unknown. Compl. Ex. A. A completed accident is also not the ongoing use of property Article 669 addresses; the only post-fire allegation—periodic "noxious odors," Compl. ¶ 154—supplies no date, source, or frequency. The count should be dismissed as to the officers and SACDs and, at minimum, limited to Smitty's and the Incident.

3. The negligence and intentional-tort claim (Eighth Cause of Action) pleads no intent and no causation.

An act is intentional only if the actor consciously desired the result or knew it was substantially certain to follow. *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981). The allegation that the defendants "knew the outcome of their lax compliance could result in a catastrophic event," Compl. ¶ 161, pleads negligence, not intent, and the intentional theory should be dismissed with prejudice. The negligence theory fails against the officers and SACDs for the reasons stated in Section IV.D. As to Smitty's, the Complaint never identifies the cause of the explosion or the breach that produced it. *Id.* ¶¶ 43, 159. EPA's October 2025 inspection documented post-fire conditions, *id.* ¶¶ 56–63, and the pre-Incident permit record concerns outfall effluent not alleged to have any connection to the explosion. *Id.* ¶¶ 53–55, 164. Injury causation is equally conclusory: the Millers allege symptoms "attributable to" exposure without identifying the contaminant, level, or pathway. *Id.* ¶ 74. At minimum, repleading is required.

4. The Article 2317.1 claim (Eighteenth Cause of Action) pleads no custody, defect, knowledge, or causation.

Article 2317.1 requires custody, a defect creating an unreasonable risk of harm, actual or constructive knowledge of the defect, and causation. La. C.C. art. 2317.1. The Complaint alleges that Smitty's had custody "through" the officers, Compl. ¶ 212, conceding the officers had none of their own, and alleges no SACD custody at all. It alleges unspecified defects "throughout" the Facility without identifying a single tank, line, or containment structure that failed, pleads no knowledge of any defect, and alleges causation only as a label, though EPA reported the cause as unknown. *Id.* ¶¶ 213–14; Compl. Ex. A. The claim should be dismissed with prejudice as to the SACDs and without prejudice as to the officers and Smitty's.

5. The trespass claim (Nineteenth Cause of Action) pleads no intent and duplicates negligence.

The trespass count rests on airborne and waterborne deposits from an accident. Compl. ¶ 217. Its only theory of intent—that the defendants "knew the result of their conduct could be a catastrophic event," *id.* ¶ 220—fails under *Bazley*, and without intent the count restates the negligence claim and seeks the same damages. *Id.* ¶ 219. No officer or SACD is alleged to have caused any entry. The intentional-trespass theory should be dismissed with prejudice, the claim dismissed as to the officers and SACDs, and any remainder treated as duplicative of the Eighth Cause of Action.

6. The loss-of-consortium claim (Twentieth Cause of Action) falls with the underlying claims.

Loss of consortium is derivative of the spouse's personal-injury claim, La. C.C. art. 2315(B), and it falls with each underlying claim dismissed above. As to any remaining defendant,

the count merely recites the elements and depends on personal-injury allegations that do not plead causation. Compl. ¶¶ 74, 222–23.

**I. The § 1983 and § 1983 Conspiracy Claims (Ninth and Twenty-First Causes of Action) Should Be Dismissed With Prejudice**

Section 1983 reaches only a person acting "under color of" state law. 42 U.S.C. § 1983. Smitty's, its officers, and the SACDs are private parties, and the Complaint pleads § 1983 liability only "[t]o the extent it is proven that Smitty's and Defendants Tate, Ellison, Lorio, and Smith acted in concert with or under color of state law." Compl. ¶ 169. That conditional allegation does not plead state action. The Twenty-First Cause of Action is no different: it describes itself as a claim "for individual-capacity compensatory and punitive damages against Defendants Zeldin and Mason," and reaches the Smitty's Defendants only "to the extent they acted as willful participants" in the alleged conspiracy. *Id.* ¶¶ 225–26. A private party may be liable as a "willful participant in joint action with the State or its agents," *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), *if* facts show it was jointly engaged with state officials in the challenged action.

The Complaint pleads no such joint engagement. It infers one from "parallel" public statements, "synchronized" information releases, and joint response operations. Compl. ¶¶ 230–33. Parallel conduct consistent with independent action does not plausibly plead an agreement, *Twombly*, 550 U.S. at 556–57, and joint emergency response is what the law requires of a facility operator and its regulators. The Complaint's own theory—that Smitty's withheld information from regulators, Compl. ¶ 232—is the opposite of an agreement with them. And the public record refutes the alleged alliance: the United States, on behalf of EPA, and the State, through LDEQ, are suing Smitty's in this Court for daily penalties of up to $68,445 under federal law and $32,500 under state law. Gov't Compl. ¶¶ 191, 196. Both claims should be dismissed with prejudice as to all Smitty's Defendants.

**J. The Remedies Demanded Are Unavailable**

Several remedies fail as a matter of law. First, the citizen-suit statutes do not authorize damages. RCRA permits only injunctions to restrain or to order necessary action, and "[n]either remedy . . . contemplates the award of past cleanup costs, whether these are denominated 'damages' or 'equitable restitution.'" *Meghrig*, 516 U.S. at 484–86. The SDWA likewise authorizes enforcement, penalties payable to the United States, costs, and equitable relief, not compensatory, medical-monitoring, relocation, emotional-distress, or property damages. 42 U.S.C. § 300j-8(a), (d). The CAA citizen-suit provision is similarly limited to injunctive relief, civil penalties, and costs. 42 U.S.C. § 7604(a), (d), (g). Every damages demand tied to RCRA, the SDWA, or the CAA should be dismissed with prejudice.

Second, the Millers lack Article III standing to seek civil penalties under the CAA, RCRA, SDWA, or LEQA for wholly past violations. Civil penalties can address ongoing violations by deterring their continuation, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185-88 (2000), but penalties paid to the federal or state treasury for wholly past violations do not redress a private plaintiff's injury, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998). The Complaint pleads no ongoing violation of any identified standard. *See* Section IV.B.1; La. R.S. 30:2026(A)(3). That is particularly so where the sovereigns are already pursuing penalties and overseeing compliance.

Third, punitive damages are not available in Louisiana absent express statutory authorization, and none applies to the tort counts; Prayer ¶ Q, which seeks damages "commensurate with" gross negligence and wanton conduct, is a punitive demand by another name, and the § 1983 punitive demands fall with those counts. Compl. Prayer ¶¶ Q, X. Fourth, the relocation demand under "42 USC § 4601 et seq.," Compl. ¶ 116, invokes the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, which governs federally funded

acquisitions and creates no claim against a private party. Fifth, no statute authorizes a court-administered medical-monitoring program against a private defendant, Compl. Prayer ¶ I; any monitoring costs are recoverable, if at all, only as damages under Article 2315(B) on proof of a manifest injury. These demands should be dismissed with prejudice.

## V. CONCLUSION

For these reasons, the Smitty's Defendants respectfully request that the Court enter an order granting the following relief:

1. **Pre-suit notice (Rule 12(b)(1), alternatively Rule 12(b)(6)).** Dismiss the CAA, RCRA, SDWA, and LEQA citizen-suit claims (First, Third, Fourth, and Fifth Causes of Action) without prejudice as to all Smitty's Defendants, because the May 20, 2026 Notice identifies no specific requirement, activity, or date, and, independently, as to the SACDs, Ellison, Lorio, Smith, and Tate individually, who received no notice.

2. **Statutory bars from government enforcement (Rule 12(b)(1), alternatively Rule 12(b)(6)).** Dismiss (a) the CERCLA claim to the extent it challenges an uncompleted response action under § 113(h); (b) the RCRA claim to the scope and duration barred by § 6972(b)(2)(B); and (c) the LEQA claim under La. R.S. 30:2026(B)(4).

3. **Federal and LEQA pleading defects (Rule 12(b)(6)).** Dismiss the CAA claim for failure to identify an emission standard or limitation; the CERCLA § 107(a) claim as pleaded, without prejudice, and with prejudice to the extent it rests on petroleum excluded by 42 U.S.C. § 9601(14); the RCRA claim for failure to tie any identified solid or hazardous waste to the alleged endangerment; the SDWA claim for failure to identify an applicable requirement; and the LEQA claim for failure to identify a specific state violation.

4. **Claims against the SACDs and officers.** Dismiss all claims against the SACDs and against each of Tate, Ellison, Lorio, and Smith, including the CAA, CERCLA, RCRA, and SDWA claims

(First through Fourth Causes of Action), and the nuisance, negligence, Article 2317.1, trespass, and loss-of-consortium claims (Seventh, Eighth, and Eighteenth through Twentieth Causes of Action). The claims against Tate, Ellison, Lorio, and Smith in their individual capacities should be dismissed without prejudice, except those dismissed with prejudice under item 5; all official-capacity claims against the officers should be dismissed with prejudice as redundant of the claims against Smitty's.

5. **Dismissal with prejudice.** Dismiss with prejudice, as to all Smitty's Defendants, the CERCLA § 113(f)(1) contribution theory; the demand for CERCLA injunctive relief; the Article 667 strict-liability claim (Sixth Cause of Action); the § 1983 and § 1983 conspiracy claims (Ninth and Twenty-First Causes of Action); the intentional-tort and intentional-trespass theories; the demand for La. R.S. 30:2025(E) penalties; and the demands for RCRA, SDWA, and CAA damages, private natural-resource damages, punitive damages, § 4601 relocation, and a medical-monitoring program.

6. **Civil penalties (Rule 12(b)(1)).** Dismiss the civil-penalty demands under the CAA, RCRA, SDWA, and LEQA for lack of Article III standing, because no ongoing violation is pleaded, and, in all events, limit any LEQA penalty to the amount authorized by La. R.S. 30:2026(A)(2), payable to the State.

7. **Remaining tort claims against Smitty's and pre-Incident CWA allegations.** Dismiss the nuisance, negligence, Article 2317.1, trespass, and loss-of-consortium claims against Smitty's as pleaded, without prejudice, and disregard Complaint paragraphs 53–55 and 65–68 as a basis for any cause of action to the extent they rest on pre-Incident CWA permit, SPCC, or facility-response-plan violations that are the subject of the government's pending CWA action.

8. **Leave to amend.** To the extent any dismissal is without prejudice, condition leave to amend on defendant-specific facts, an identified statutory requirement, a compliant pre-suit notice, and a remedy authorized by law.

9. **Supplemental jurisdiction.** If the Court dismisses the federal claims against the Smitty's Defendants, decline supplemental jurisdiction over any remaining state-law claims under 28 U.S.C. § 1367(c)(3) and dismiss them without prejudice to refiling in Louisiana state court. When all federal claims are eliminated before trial, judicial economy, convenience, fairness, and comity will usually "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Respectfully Submitted,

**CHEHARDY, SHERMAN, WILLIAMS, RECILE & HAYES, LLP**

*s/Matthew A. Sherman*
JAMES M. WILLIAMS (BRN 26141)
DAVID R. SHERMAN (BRN 12015)
MATTHEW A. SHERMAN (BRN 32687)
PATRICK R. FOLLETTE (BRN 34547)
One Galleria Blvd., Suite 1100, Metairie, LA 70001
P. O. Box 931, Metairie, LA 70004-0931
Telephone: (504) 833-5600 Fax: (504) 833-8080
Email:james@thetrialteam.com;drs@chehardy.com
mas@chehardy.com; prf@chehardy.com

*-and-*

**A. BRADLEY BERNER, APLC**
A. Bradley Berner (BRN 26199)
1250 Southwest Railroad Ave.
Suite 230 A (70403)
P.O. Box 1935
Hammond, Louisiana 70404
Telephone: (985) 549-0673 Fax: (985) 542-8885
Email: brad.bernerlaw@gmail.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel.

*s/Matthew A. Sherman*
MATTHEW A. SHERMAN